UNITRD STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

MILOV M. SONNIER,

      Plaintiff,

                             Case No.: 4:14cv 35

DIAMOND HEALTHCARE CORPORATION,
DIAMOND HEALTHCARE OF WILLIAMSBURG, INC,
D/B/A THE PAVILION AT WILLIAMSBURG PLACE,

      Defendants.

## COMPLAINT

      Plaintiff, MILOV M. SONNIER, for her complaint against DIAMOND

HEALTHCARE CORPORATION, and DIAMOND HEALTHCARE OF

WILLIAMSBURG, INC., D/B/A THE PAVILION AT WILLIAMSBURG PLACE,

states the following:

## JURISDICTION AND VENUE

      1.   This action arises under Title VII of the Civil Rights Act of 1964, 42

U.S.C. Sections 2000e-5(f)(1) and (3), and Title I of the Civil Rights Act of 1991, 42

U.S.C. Sections 21981 and 1981 (a).  This Court has jurisdiction over this matter

pursuant to 28 U.S.C. Sections 451, 1331, 1337, 1343 and 1345.

      2.   At all times relevant to this complaint, the Defendants, DIAMOND

HEALTHCARE CORPORATION,  and DIAMOND HEALTHCARE OF

WILLIAMSBURG, INC. are registered with the Commonwealth of Virginia and do

business within the Newport News Division and therefore, jurisdiction and venue is proper in this Court pursuant 28 U.S.C. Sections 127 and 1391.

3.    All conditions precedent to initiate this lawsuit has been fulfilled.

## PARTIES

4.    Plaintiff MILOV M. SONNIER ("Plaintiff" or "Sonnier") is a resident of Virginia. Mrs. Sonnier's race is African-American.

5.    DIAMOND HEALTHCARE CORPORATION ("Defendant" or "Diamond Healthcare") is a Virginia corporation. It is the parent company to Diamond Healthcare of Williamsburg, Inc. which does business in the Eastern District and has more than 15 employees.

6.    DIAMOND HEALTHCARE OF WILLIAMSBURG, INC. ("Defendant" or "Diamond Healthcare") is a Virginia corporation. It does business under the fictitious name, The Pavilion at Williamsburg Place. Defendant does business in the Eastern District and has more than 15 employees.

7.    At all times relevant to this Complaint, the acts taken by Defendant's agents, officers and employees described in this complaint were performed within the course and scope of their employment and on behalf of Employer.

## FACTUAL ALLEGATIONS

8.    On or about September 10, 2012, Plaintiff began working for Diamond Healthcare as a Social Worker.

9.    Sometime during the middle of November, Greg Thomas, an employee of Diamond Healthcare, first made a statement of a sexual nature to Mrs. Sonnier.  He said to Mrs. Sonnier "she was in his closet."

10.   Sometime during the month of November and December, Greg Thomas told Mrs. Sonnier "you look nice in that blouse."

11.   On or about November 2012 and December 2012, Greg Thomas, an employee of Diamond Healthcare was leering at Plaintiff as she was bending over a chart rack and said to Plaintiff, "You look nice in those pants".

12.   Mrs. Sonnier told Greg Thomas that she did not appreciate his inappropriate comment and asked him to stop.

13.   Greg Thomas stated that he realized his comment was inappropriate and he apologized.

14.   Before leaving work that same day, Mrs. Sonnier contacted Tom Cino, Social Work Director and Supervisor and reported the incident involving Greg Thomas.

15.   Mrs. Sonnier advised Tom Cino she was uncomfortable with Greg Thomas.

16.   Tom Cino told Mrs. Sonnier he would discuss the matter with her later, but he never did so.

17.   On or about February 2013, Greg Thomas was transferred to the Social Work Department where Mrs. Sonnier was assigned.

18.   On or about February 26, 2013, Mrs. Sonnier spoke with Tom Cino during their weekly supervision meeting and expressed again her concerns about Greg Thomas and that she was uncomfortable working with him.

19. On or about March 4, 2013, Mrs. Sonnier contacted Chris Ruble, the CEO, to request a meeting.

20. Chris Ruble referred Mrs. Sonnier to Tom Cino.

21. On or about March 5, 2013, Mrs. Sonnier contacted the ethics hotline and reported the incident with Greg Thomas and that Tom Cino was unresponsive.

22. On or about March 13, 2013, Mrs. Sonnier met with Chris Ruble, Tom Cino and Greg Thomas with regards to the sexual harassment incident.

23. Mrs. Sonnier was questioned, but Greg Thomas was not.

24. Mrs. Sonnier is African-American and female and was subjected to discrimination, harassment, retaliation and hostile work environment by Diamond Healthcare because of her race and gender.

25. During the course of her employment at Diamond Healthcare of Mrs. Sonnier was subjected to repeated acts of gender-based and racial discrimination, retaliation and hostility by her supervisors, while employed by Diamond Healthcare.

26. In March of 2013 Tom Cino retaliated against Mrs. Sonnier as follows:

    (a) He began to keep a supervision log when he had not previously used a log prior to Mrs. Sonnier reporting to the ethics hotline about the sexual harassment complaint.

    (b) He admitted that Mrs. Sonnier made a complaint about the sexual harassment, but made excuses why he did not act on the complaint.

    (c) He approached Mrs. Sonnier and told her the CEO received complaints about her work;

    (d) He began to make continuous complaints about Mrs. Sonnier's work

documenting them in his supervision log;

    (e)  He stopped responding to Mrs. Sonnier, either her phone calls or e-mails;

    (f)  He made changes with regards to her clients without Mrs. Sonnier's knowledge;

    (g)  He began to discredit Mrs. Sonnier's skills and knowledge in group settings, humiliating her and designed to make appear unqualified;

    (h)  He revoked Mrs. Sonnier's vacation that had previously been approved;

    (i)  He called Mrs. Sonnier's home and told her to quit her job.

27.    After the meeting Mrs. Sonnier was subjected to retaliation which also affected her clients.

28.    Mrs. Sonnier's supervisor changed their supervision meetings to times when they knew she was unavailable.

29.    The supervision meetings were mandatory.

30.    Mrs. Sonnier's supervisor assigned Greg Thomas to assist her with her files, though Mrs. Sonnier was uncomfortable being around Greg Thomas.

31.    Whenever Mrs. Sonnier presented her cases during treatment team meetings she was constantly interrupted and spoken to in a condescending manner.

32.    Mrs. Sonnier began assigning her unreasonable tasks.

33.    Mrs. Sonnier told her supervisor she believed she was being retaliated against.

34.    Mrs. Sonnier prepared a letter of resignation on March 29, 2013, and gave two weeks notice.

35.    On April 2, 2013, Mrs. Sonnier was told by Rene Larve from Human Resources that that was her last day and she was escorted from the building.

36.    Mrs. Sonnier's supervisors knew of and permitted discriminatory, harassing actions and the hostile environment they created.  By their tolerance and inaction, these supervisors directly encouraged further discriminatory, harassing, retaliatory actions and the hostile environment they created.

37.    Mrs. Sonnier's supervisors took no meaningful action to investigate or eliminate the discriminatory, harassing, retaliatory actions and the hostile environment they created.

38.    Before Mrs. Sonnier's complaint of sexual harassment against Greg Thomas, a white female employee of Diamond Healthcare complained of sexual harassment.

39.    The employee who was the subject of the white female's complaint was fired immediately.

40.    As a direct and proximate result of the events alleged, Mrs. Sonnier was forced to leave her employment with Diamond Healthcare on April 2, 2013.

41.    On April 2, 2013, Mrs. Sonnier asked Rene Larve if there had been any complaints made about her work.

42.    Rene Larve told Mrs. Sonnier there had been no complaints.

43.    Mrs. Sonnier asked Rene Larve if she could she her personnel file.

44.    Rene Larve allowed Mrs. Sonnier to see her personnel file.

45.    There were no complaints, admonishments, or anything negative in Mrs. Sonnier's file.

6

46.  Greg Thomas replaced Mrs. Sonnier.

47.  Greg Thomas was not qualified for the position that Mrs. Sonnier held.

48.  Gary Baker, an employee with Diamond Healthcare, shortly after Mrs. Sonnier was forced to leave, gave his two weeks notice of resignation to the company.

50.  Chris Ruble, CEO paid Gary Baker, a white male, $11,000.00 more a year to stay with Diamond Healthcare.

51.  Chris Ruble also hired an in house person to assist Gary Baker with his case load.

52.  Melissa Ross, an African-American female gave her two weeks notice and was made no offer to stay.

53.  Melissa Ross had a master's degree, and had specialized training in many areas such as Eye Movement Desensitization and Reprocessing (EMDR).

54.  Melissa Ross also was a licensed professional counselor (LPC), but was not offered a raise to remain with the company.

55.  Mrs. Sonnier would have continued working for Diamond Healthcare Corporation and Diamond Healthcare of Williamsburg, Inc, but for the discriminatory, harassing, retaliatory actions alleged.

56.  On November 5, 2013, Gary Sonnier, Mrs. Sonnier's husband and who was employed by Diamond Healthcare Corporation and Diamond Healthcare of Williamsburg, Inc., overheard a conversation between Greg Thomas and mental health tech Tydell after passing them in the hallway.

57.  Thomas and Tydell were not aware that Mr. Sonnier was still standing near by and could hear them.

7

58.     Greg Thomas said to Tydell "his wife use to work here."

59.     Greg Thomas began laughing stating "boy I sure tried to get inside of her" (referring to Mrs. Sonnier).

60.     Greg Thomas then began to boat about inappropriate sexual comments that he made during the time she was employed with the company.

61.     Tydell responded that "if I feel that I can get involved with a married woman I would have done the same thing."

62.     They both began to laugh in a manor suggesting that Greg Thomas had gotten away with his misconduct involving Mrs. Sonnier.

63.     Greg Thomas this stated" I wonder if the brother is taking care of her at home."

64.     Tydell said "he needs to."

65.     After that Mr. Sonnier came around the corner so they could see him.

66.     Greg Thomas and Tydell stopped talking.

67.     Mr. Sonnier reported the incident to Chris Ruble, COE and to Mental Health Tech Stephanie Parker.

68.     Mr. Sonnier did not hear anything from Healthcare until his resignation letter was submitted on December 24, 2013.

### FIRST CLAIM FOR RELIEF

### (42U.S.C. Section 1981)

69.     Plaintiff incorporates by reference the paragraphs set forth above.

70.     Diamond Healthcare has engaged in unlawful discrimination prohibited by 42 U.S.C. Section 1981. The discrimination includes differential treatment toward Mrs. Sonnier on the basis of her race or color.

71.     Diamond Healthcare's actions were intentional.

72.     Diamond Healthcare's actions were malicious or with reckless disregard for Mrs. Sonnier's rights protected by federal law.

73.     Diamond Healthcare's unlawful conduct has deprived Mrs. Sonnier of equal employment opportunities and caused her economic, physical pain and sickness and emotional harm for which Diamond Healthcare is proximately and legally responsible.

## SECOND CLAIM FOR RELIEF

### (Discrimination, Harassment, Hostile Work Environment
### and Retaliation Prohibited under Title VII)

74.     Plaintiff incorporates by reference the paragraphs set forth above.

75.     Diamond Healthcare has engaged in unlawful discrimination, harassment, retaliation and subjected Plaintiff to a hostile work environment prohibited by Section 703(a)(1) of Title VII, 42 U.S.C. Section 2000e-2(a) on the basis of her race, African American, and gender, female.

76.     These practices include subjecting Mrs. Sonnier to discrimination, harassment, retaliation and to a hostile work environment based on her race, African-American, and gender, female.

77.     Defendant has engaged in unlawful practices in violation of section 704(a) of Title VII, 42 U.S.C. section 2000e-3(a).

9

78.   Defendant's actions were intentional, malicious or with reckless disregard for Mrs. Sonnier rights protected by federal law.

79.   Diamond Healthcare's unlawful conduct has deprived Mrs. Sonnier of equal employment opportunities and caused her economic, physical pain and sickness and emotional harm for which Diamond Healthcare is proximately and legally responsible.

WHEREFORE, Plaintiff respectfully requests judgment be entered against Diamond Healthcare for:

1,   A declaration that Diamond Healthcare's actions were unlawful;

2.   General damages in an amount to be proved at trial;

3.   Special damages in an amount to be proved at trial;

4.   Punitive damages in an amount to be proved at trial;

5.   Injunctive relief as the Court determines proper;

6.   Attorneys' fees, cost of suit and prejudgment interest; and

7.   Such other relief as the Court deems appropriate.

Dated: March 28th, 2014.               THE VERBENA ASKEW LAW FIRM, P.C.


By: _Verbena M. Askew_
     Verbena M. Askew
     Attorney for Milov Sonnier

## JURY DEMAND

Plaintiff hereby demands a jury on matters subject to jury determination in this action.

Dated: March 28th ,2014

THE VERBENA ASKEW LAW FIRM, P.C.

By: *Verbena M. Askew*

     Verbena M. Askew
     Attorney for Milov Sonnier